IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00586-MSK-MJW

PARTMINER WORLDWIDE INC.,

   Plaintiff,

v.

SILICONEXPERT TECHNOLOGIES INC.; and
JEFFREY J. WILLIAMS,

   Defendants,

and

AVNET, INC.,

   Interested Party.

_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS
AND DENYING MOTION TO SEAL**
_____

   **THIS MATTER** comes before the Court pursuant to Plaintiff Partminer Worldwide,

Inc.'s ("Partminer") Motion to Dismiss Counterclaims[1] (**# 57**) by Defendant Jeffrey Williams,

Mr. Williams' response (**# 58**), and Partminer's reply (**# 67**); and Partminer's Motion to Seal

(**#68**) an exhibit to its reply brief.

<u>**FACTS**</u>

   Partminer commenced this action against Mr. Williams, its former employee, and

_____

   [1]This motion supersedes prior motions to dismiss (**# 26, 51**) by Partminer, and those
earlier versions are therefore denied as moot.

1

Defendant Siliconexpert Technologies, Inc. ("Silicon"), Mr. Williams' current employer,

alleging that Mr. Williams took Partminer's confidential and proprietary business information

when he was terminated by Partminer and is now using that information to the benefit of Silicon,

Partminer's competitor. Partminer asserts a variety of claims, sounding in tort and contract,

among other things, against both Mr. Williams and Silicon.

Mr. Williams filed an Answer With Counterclaims (# 47) against Partminer. Mr.

Williams alleges that Partminer's management was "paranoid" about its employees defecting to

competitors and that Partminer accused and terminated Mr. Williams for such conduct without

proof. He notes that Partminer has already filed a suit against him in Colorado District Court for

Arapahoe County, accusing Mr. Williams of disseminating Partminer's confidential information

to Avnet, Inc. Mr. Williams alleges three counterclaims against Partminer: (i) abuse of process,

in that the instant suit (as well as, apparently, the Arapahoe County suit) was not commenced for

any proper purpose, but rather, because Partminer's intention is "to litigate Mr. Williams into

oblivion . . . and thereby eliminate lawful competition by forcing his resignation or termination

of employment from Silicon"; (ii) outrageous conduct; and (iii) defamation, in that Partminer's

general counsel explained the company's allegations against Mr. Williams – including the

accusation that he was the leak to Avnet – to a Partminer salesperson and, in addition, sent a

letter to Silicon, Mr. Williams' employer, containing the same information.

Partminer moves (# 57) to dismiss Mr. Williams' counterclaims pursuant to Fed. R. Civ.

P. 12(b)(6), arguing: (i) with regard to the abuse of process claim, Mr. Williams has not

adequately alleged that Partminer's lawsuits constitute an improper use of legal process; (ii) with

regard to the outrageous conduct claim, Mr. Williams has failed to allege sufficiently outrageous

conduct by Partminer; and (iii) with regard to the defamation claim, Partminer enjoys a legal privilege to disclose facts alleged in pending litigation.

Separately, Partminer moves **(# 67)** to seal an exhibit attached to its reply brief.  The exhibit in question is the Complaint in the Arapahoe County suit, which, in turn, includes as an exhibit an affidavit from Mr. Williams dated May 4, 2007, and discussing certain contacts that Mr. Williams had with certain competitors of Partminer.  Partminer argues that the affidavit is privileged as material prepared in anticipation of litigation, and notes that the Arapahoe County court has sealed it on that basis.  Partminer requests that this Court similarly seal the exhibit.

## ANALYSIS

### A.  Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards.  First, although "detailed factual allegations" are not required, a complaint must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." *Id.* Second, because a court is "not bound to accept as true a legal conclusion couched as a factual allegation," it must first identify and disregard averments that "are no more than conclusions [which] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Id.*

## B. Abuse of process

A claim for abuse of process lies where a party invokes legal proceedings not for their intended purpose, but in an effort to obtain collateral results that would not be available by the normal operation of such proceedings. *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994), *citing Restatement*, 2d <u>Torts</u>, § 682, comment b (no claim lies "when the process is used for the purpose for which it is intended, [even though] there is an incidental motive of spite or an ulterior purpose"). For example, a party engages in abuse of process when he files liens against his adversary, not because the filer claims an interest in the property, but to compel the adversary to concede a child custody proceeding. *James H. Moore*, 892 P.2d at 373, *citing Scozari v. Barone,* 546 So.2d 750 (Fla.Ct.App.1989). Frequently misunderstood, the concept of abuse of process requires two basic showings: using legal <u>means</u> improperly, and harboring an improper <u>motive</u> for doing so.

Here, Partminer argues that Mr. Williams cannot show that it used improper <u>means</u>, even though Mr. Williams may be correct that Partminer's actions are the result of an improper

motive.  The legal process is invoked improperly when a particular procedural tool is used in an attempt to accomplish a purpose which that tool, when properly used, could not provide.  *James H. Moore*, 892 P.2d at 373, *citing Aztec Sound Corp. v. Western States Leasing Co*., 510 P.2d 897 (Colo. App. 1973) (filing replevin action not to obtain physical property allegedly owned, but to force plaintiff to pay over a sum of money); *Scozar*i, *supra* (filing lis pendens not to assert claim of title to home, but to gain leverage in child custody dispute).  On the other hand, no relief lies where a party properly invokes a procedural tool correctly for the relief that it offers, even though it does so for cynical purposes. *James H. Moore,* 892 P.2d at 373, *quoting Institute for Professional Development v. Regis College*, 536 F.Supp. 632, 635 (D.Colo.1982) ("If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim").

In this case, Mr. Williams alleges that Partminer's filing of civil lawsuits, both here and in Arapahoe County, constitute improper use of the legal process, because the suits, he claims, lack factual merit. As *Institute for Professional Development* makes clear, even the filing of a lawsuit the filer knows to be unfounded is insufficient to demonstrate the improper use of legal process.  Rather, the Court looks to the nominal purpose for which the process is invoked.  Here, Partminer has sued Mr. Williams asserting claims that are apparently colorable on their face,[2] and requests relief consistent with the claims alleged.  This is the proper purpose for which a lawsuit is filed.  *Compare Palmer v. Diaz*, 214 P.3d 546, 551 (Colo. App. 2009) (affirming jury

---

[2]The Court notes that although Mr. Williams may dispute the factual accuracy of Partminer's contentions, he did not move to dismiss the claims asserted against them as <u>legally</u> deficient.

verdict for abuse of process where jury found that, in slander lawsuit brought by Palmer against witnesses who had previously testified against him in criminal matter, Palmer did not have "any expectation of recovery" on his slander claims and he did not believe his claims were meritorious).  Mr. Williams is correct in recognizing that a civil litigation is an inherently expensive and time consuming process, and he may indeed be correct that Partminer relishes the effect that fact may have upon him.  But finding that Partminer has an improper motive for its actions is not the same as finding that he has used improper means to do so.  Because Mr. Williams has not alleged facts that show that Partminer used any particular legal tool improperly, his claim for abuse of process fails.

### C.  Outrageous conduct

A claim for outrageous conduct lies under Colorado law where: (i) a defendant engages in extreme and outrageous conduct; (ii) does so recklessly, or with the intent to cause the plaintiff severe emotional distress; and (iii) the plaintiff suffers severe emotional distress as a result.  *Palmer v. Diaz,* ___ P.3d ___, 2009 WL 1331097 (Colo. App. May 14, 2009).  The claim is available in response to a "very narrow type of conduct" – that is, conduct that "is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Green v. Qwest Services Corp.*, 155 P.3d 383, 385 (Colo. App. 2006); *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (facts alleged must arouse such resentment against the defendant in average members of the community as to lead them to exclaim, "outrageous!").  Although the question of whether conduct is outrageous is generally a question for the factfinder, the Court may dismiss a claim if it finds that reasonable minds could not differ on the question.

6

*English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004).

Here, Mr. Williams' response brief identifies the following acts that he contends support this claim: "Plaintiff has, <u>without factual basis</u>, accused him of being a leak of proprietary information to competitors, including Silicon[; and has subjected him to] a pattern of court-related activity, including a two-day deposition for a case in which Mr. Williams was not a party, where Plaintiff could not justify its accusations."

This is somewhat analogous to the situation in *Churchey.* There, the plaintiff had been terminated from her employment based on what she alleged was a false accusation that she had exhibited dishonesty. 759 P.2d at 1338. Although the Colorado Supreme Court ultimately concluded that her claim for defamation based on the false accusation could proceed to trial, the Court affirmed the lower court's grant of summary judgment to the employer on the plaintiff's claim for outrageous conduct.[3] *Id.* at 1350-52. Similarly, in *Dorr v. C.B. Johnson, Inc.,* 660 P.2d 517, 520-21 (Colo. App. 1983), the court affirmed a grant of summary judgment to a defendant on a claim of outrageous conduct where, following a traffic accident involving the plaintiff, the defendant had, among other things, published unspecified slanderous statements about the plaintiff's driving in a report submitted to the Colorado Department of Labor and Employment and had made statements to third parties falsely alleging that the plaintiff had been

---

[3]The Colorado Supreme Court's opinion in *Churchey* recites numerous acts that the plaintiff contended supported the outrageous conduct claim, including: her termination for dishonesty, the employer's failure to follow its own personnel policies, allowing the employer's nurse to override instructions from the plaintiff's own doctor, and her supervisor mistakenly blaming her for an action she did not commit. *Id.* at 1350. The Court's discussion of its reasoning only specifically addressed the contention that failure to follow personnel policies constituted outrageous conduct. *Id.* Nevertheless, the Court affirmed the grant of summary judgment on the outrageous conduct claim in its entirety, suggesting that it found none of the alleged acts, individually or in concert, to rise to the level of sufficiently outrageous.

intoxicated at the time of the accident. Even viewing the totality of the defendant's alleged conduct as a whole, the court concluded that the plaintiff had failed to allege sufficiently outrageous conduct. *Id.* These cases suggest that false accusations of misconduct – even false accusations that a person has engaged in criminal conduct – fail to rise to the level of sufficient outrage.

Thus, to the extent Mr. Williams' outrageous conduct claim is premised on Partminer falsely accusing him of leaking information to competitors, Mr. Williams fails to state a claim. Similarly, the mere fact that a party has filed a lawsuit against another party – even a meritless one – is conduct insufficiently outrageous to support a claim.[4] *Waskel v. Guaranty Nat. Corp.*, 23 P.3d 1214, 1222-23 (Colo. App. 2000) (affirming dismissal of outrageous conduct claim by employees based on former employer's decision to sue them for breach of loyalty). Accordingly, the Court finds that Mr. Williams' outrageous conduct claim fails as a matter of law.

### D.  Defamation claim

Finally, Partminer seeks dismissal of Mr. Williams' defamation claim, arguing that any defamatory statement published by Partminer falls within the litigation privilege.

Colorado recognizes a limited privilege to defame:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

---

[4]Indeed, under Mr. Williams' theory, any person who believes a lawsuit filed against them lacks merit could counterclaim for outrageous conduct.

*Club Valencia Homeowner's Assn., Inc. v. Valencia Assocs.*, 712 P.2d 1024, 1027 (Colo. App. 1985), *quoting Renner v. Chilton*, 351 P.2d 277 (1960). As explained in the Restatement (Second), Torts § 586, from which Colorado draws the privilege, the statement must be one made by an attorney acting in his capacity as such, and must have some connection to the subject matter of the proposed or pending litigation. *Id.*, comment c.

With this in mind, the Court examines the two allegations that Mr. Williams contends support his defamation claim. First, Mr. Williams alleges that "the general counsel of Plaintiff told Kevin Carter, a mere salesperson of the Plaintiff, that Mr. Williams was the 'leak' of proprietary information alleged in the state court case against Mr. Williams." *Docket* # 47, ¶ 43. This allegation makes clear that the allegedly defamatory statement was made by an attorney (*i.e.* Partminer's "general counsel") and that it concerned a matter at issue in an ongoing judicial proceeding (*i.e.* "Mr. Williams was the leak . . . alleged in the state court case"). The court in *Club Valencia* appears to also require that the recipient of the statement be somehow connected to the proceeding. 712 P.2d at 1027, 1028. Here, the recipient of the statement – Kevin Carter – is alleged to be an employee of Partminer, one of the parties to the Arapahoe County suit. Under these circumstances, the communication to Mr. Carter is clearly within the scope of the litigation privilege. *Accord Club Valencia, id.* at 1028 (communication made to individual homeowners was privileged, as homeowners were connected to litigation by virtue of being members of homeowner's association, which was party to the suit). Thus, the communication to Mr. Carter is insufficient to support a defamation claim.

The remaining contention by Mr. Williams is that "On or about September 24, 2008, Plaintiff counsel sent a letter to the president of Silicon, Mr. Williams' employer, stating it had

filed the above-referenced state court lawsuit against Mr. Williams." On its face, this allegation fails to allege a defamatory statement at all; by the averment's own terms, the September 24, 2008 letter did no more than inform Silicon that Partminer's counsel had filed a state-court lawsuit against Mr. Williams. This is indisputably a true, non-defamatory statement. Accordingly, Partminer's motion to dismiss the defamation claim is granted.

However, the Court is reluctant to dismiss a pleading pursuant to Fed. R. Civ. P. 12(b)(6) when defects in that pleading are susceptible to correction by amendment. Here, although Mr. Williams' abuse of process, outrageous conduct, and defamation claim based on the statements to Mr. Carter fail as a matter of law, the defamation claim premised on the letter from Partminer's counsel to Silicon fails because the claim is insufficiently pled. Arguably, Mr. Williams might be able to rescue the claim by pleading, with more specificity, the alleged defamatory language contained in the letter or the extent to which the claim derives from some other source.[5] Accordingly, the Court grants leave to Mr. Williams to file a Second Amended Answer with Counterclaims within 15 days of this Order, which may attempt to replead only the

---

[5]Should Mr. Williams choose to replead, the Court anticipates that Partminer will again contend that the letter to Silicon is governed by the litigation privilege. Although it appears to be undisputed that the letter was written by an attorney involved in the Arapahoe County action and concerned issues squarely presented in that case, this Court has some doubt as to whether the privilege protects communications to third parties, such as Silicon, that are unconnected to the pending lawsuit. In this regard, the Court expects that future briefing from the parties on this issue will address the relevant portions of *Club Valencia*, 712 P.2d at 1027 ("recipient must be involved in" the proceeding); *Buckhannon v. US West Communications, Inc.*, 928 P.2d 1331, 1335 (Colo. App. 1996) (affirming grant of summary judgment on privilege grounds where allegedly defamatory communication concerning plaintiff was between defendant and its insurer, who was not a party to the legal proceeding in question); *Seidl v. Greentree Mortgage Co.*, 30 F.Supp.2d 1292, 1313-14 (D. Colo. 1998) (finding no privilege where communication made to third parties or media); and *Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1043 (10th Cir. 1990) (discussed in *Seidl*), among others.

defamation counterclaim to the extent it turns on the letter from Partminer's counsel to Silicon.

Should Mr. Williams elect not to amend his Counterclaims on this point, the dismissal of the

defamation counterclaim in its entirety shall take effect without further order of the Court.

### E.  Motion to Seal

Partminer moves to seal the exhibit to its reply brief, which consists of the Arapahoe

County complaint and its accompanying exhibit, Mr. Williams' affidavit.  It is the affidavit alone

that Partminer contends warrants protection from public dissemination on the grounds that it is

material prepared in anticipation of litigation.

The Supreme Court acknowledged a common-law right of access to judicial records in

*Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978).  This right is premised upon

the recognition that public monitoring of the courts fosters important values such as respect for

the legal system.  *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002).  Judges have a

responsibility to avoid secrecy in court proceedings because "secret court proceedings are

anathema to a free society."  *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (J. Kane).

There is a presumption that documents essential to the judicial process are to be available to the

public, but they may be sealed when the public's right of access is outweighed by interests which

favor nondisclosure.  *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).  It is

within the district court's discretion to determine whether a particular court document should be

sealed.  *See Nixon,* 435 U.S at 599. A showing of good cause for sealing is required to ensure

public confidence in the judicial process.  It is critical that the public be able to review the

factual basis of this Court's decisions and evaluate the Court's rationale so that it may be

confident that the Court is functioning as a neutral arbiter.  *Cf. McVeigh*, 119 F.3d at 814.

Ordinarily, the Court would find that Partminer has failed to make a sufficient showing to warrant sealing the exhibit. While courts do confer some privilege on attorney work product prepared "in anticipation of litigation," that privilege is obviously lost when the document is actually tendered to a court in support of a party's allegations. At that point, the material is no longer "material prepared in anticipation of litigation"; it is now "evidence." As such, only the most compelling reasons can justify shielding it from public scrutiny, and Partminer's motion to seal reveals none. Partminer makes only the boilerplate assertion that the document is privileged, and that it was sealed by the Arapahoe County court.[6] Thus, ordinarily, this Court would deny the motion and direct that the exhibit be unsealed.

However, the Court recognizes that, as the discussion above makes clear, the exhibit attached to Partminer's reply brief is irrelevant to the issues before the Court. Partminer's reply brief makes reference to the exhibit twice: once simply for the fact of its existence ("Williams' counterclaims arise from Partminer's filing of two lawsuits: (a) a lawsuit against Mr. Williams in Arapahoe County for breach of his duty of loyalty while employed at Partminer and (b) this action. . . . A copy of the Arapahoe County complaint is filed herewith. . ."), and once for the proposition that "a simple review of that complaint provides detailed reasons and documentary

---

[6]This Court ascribes little weight to the decision of the Arapahoe County court to seal the exhibit for two reasons. First, the court's order sealing the document contains no explication of its rationale, much less a discussion of how the court balanced the public's strong interest in access to judicial records against Partminer's interest in keeping the document under seal. Second, the court's order was quite ambivalent. It states that the motion to seal is granted "subject to reconsideration following service and input by defendants on the issue." This strongly suggests that the court was not entirely persuaded that sealing was appropriate, and that the court did so only due to the lack of opposition. This Court notes that motions to seal are frequently unopposed, and often the burden to raise and address the public interest must be borne *sua sponte* by the Court itself.

support for Partminer's conclusions."  Neither reference is necessary here: the existence of the suit is already pled by Mr. Williams in his counterclaims, *Docket # 47, ¶ 30*, and the fact that the allegations in that suit may be supported is irrelevant, as Partminer's Rule 12 motion requires that this Court treat Mr. Williams' contentions – that the allegations in the Arapahoe County suit are meritless – as true.  Most importantly, the Court observes that the exhibit to that Complaint – Mr. Williams' affidavit – is never referenced by Partminer and thus, is irrelevant to the proceedings herein.[7]

Because the Arapahoe County Complaint was not considered by the Court in reaching its decision on any of the matters herein (except with regard to the Motion to Seal), the public's interest in reviewing that document is greatly diminished.  *See e.g. Riker v. Federal Bureau of Prisons*, 315 Fed.Appx. 752, 755 (10th Cir. 2009) (unpublished).  Here, the Court has some doubt that Partminer retains any interest in protecting the affidavit against public disclosure, but the Court also finds that the public interest in having access to that document is, at this time, negligible.  Accordingly, the Court will not grant Partminer's Motion to Seal, as Partminer has made an insufficient showing to warrant sealing, but nor will the Court direct that the document, currently filed under provisional seal, be unsealed.  Indeed, for practical purposes, the Court will deem the exhibit to Partminer's reply brief withdrawn as irrelevant.

---

[7]D.C. Colo. L. Civ. R. 7.2(C)(4), which governs sealing, expressly requires parties requesting sealing of documents to address "why a less restrictive alternative to the relief sought is not practicable."  Had Partminer engaged in this exercise, it would have been obvious that the exhibit to the Complaint (and perhaps even the Complaint itself) could have been omitted from the reply brief as irrelevant..  The Court assumes that Partminer did not address the alternatives to submission of the affidavit as required by Local Rule 7.2 because Partminer's Motion to Seal was filed on December 1, 2009, the first date on which the newly-revised Local Rule took effect, and was likely prepared before the new rule became effective..

## CONCLUSION

For the foregoing reasons, Partminer's Motion to Dismiss **(# 57)** Mr. Williams' Counterclaims **(# 47)** is **GRANTED**.  The counterclaims for abuse of process, outrageous conduct, and defamation based on the communication to Mr. Carter are **DISMISSED**.  Mr. Williams is granted 15 days to file a Second Amended Answer with Counterclaims, so as to replead that portion of the defamation claim that concerns the letter to Silicon; should Mr. Williams elect not to replead that portion of the defamation claim, the defamation claim will be deemed dismissed in its entirety without further Order of the Court.  Partminer's Motion to Seal **(# 68)** is **DENIED**, but the Court directs that the document filed at Docket # 69 is **DEEMED WITHDRAWN** and shall remain under seal.  Partminer's prior motions at Docket # 26 and 51 are **DENIED AS MOOT**, having been superseded.

Dated this 10th day of February, 2010

BY THE COURT:

Marcia S. Krieger
United States District Judge