IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00586-MSK-MJW

PARTMINER WORLDWIDE INC.,

       Plaintiff,

v.

SILICONEXPERT TECHNOLOGIES INC.; and
JEFFREY J. WILLIAMS,

       Defendants,

and

AVNET, INC.,

       Interested Party.

---

## OPINION AND ORDER SUSTAINING IN PART, AND OVERRULING, IN PART, OBJECTIONS TO RECOMMENDATION AND GRANTING, IN PART, MOTION FOR SANCTIONS

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Objections (**# 211**) to the September 23, 2010 Recommendation (**# 194**) of the Magistrate Judge that the Plaintiff's Motion for Sanctions (**# 169**) be granted, the Plaintiff's response (**# 218,** as supplemented **# 238**), and the Defendants' reply (**# 239**).[1]

---

[1]The Court previously reserved ruling (**# 223**) on the Defendants' Motion for Reconsideration (**# 205**), the Defendants' Motion to Permit Oral Argument (**# 207**), and the Defendants' Motion for Reconsideration of the Recommendation (**# 208**).  With the exception of the request for oral argument, which is denied as unnecessary in light of this ruling, the Court addresses these motions as part of its analysis.  Also pending is Partminer's Motion for Hearing (**# 243**) concerning the motions at issue here, which is also denied as moot in light of this ruling.

1

## **FACTS**

Greatly summarized, this case concerns a dispute between two corporate competitors. Defendant Jeffrey Williams was previously employed by Plaintiff Partminer.  After Partminer terminated Mr. Williams' employment, he was hired by Defendant Siliconexpert, Partminer's competition.  Partminer generally contends that Mr. Williams took Partminer's confidential and trade secret information and improperly shared it with Siliconexpert.

The instant matter concerns a Motion for Sanctions **(# 169)**, filed by Partminer.  That motion contends[2] that, on or about September 19, 2008, Partminer wrote to Siliconexpert, expressing concerns about Siliconexpert's hiring of Mr. Williams.  Partminer informed Siliconexpert that Mr. Williams was subject to a Confidentiality Agreement with Partminer and was prohibited from disclosing or using Partminer's trade secrets, including customer lists and other information.  On October 15, 2008, in a state court lawsuit between Partminer and Mr. Williams, Mr. Williams allegedly admitted retaining a flash drive, branded with Partminer's name, containing a variety of information about Partminer's customers.  Although Mr. Williams turned over the flash drive, Partminer believed that he had already provided the information contained on the drive to Siliconexpert and that Siliconexpert and Mr. Williams were using that information to compete for Partminer's customers.

Partminer submitted requests for production to the Defendants, seeking disclosure of various categories of documents relating to the Partminer customer information Mr. Williams

---

[2]Needless to say, the Defendants dispute many of the facts asserted by Partminer.  The Court has taken note of the Defendants' position with regard to these matters, but for purposes of brevity, does not recite them herein.  Ultimately, except as discussed below, the parties' contentious views of the proceedings to date are irrelevant to the analysis.

might have shared with Siliconexpert, but the Defendants produced no documents reflecting the sharing of this information.  According to the motion, Partminer then sought to examine the contents of the computer Mr. Williams was using at Siliconexpert.

The examination consisted of an outside examiner searching for files containing either the word "Partminer" or the names of certain, agreed-upon current and former Partminer customers.  The search revealed more than 270,000 pages of documents that had not previously been produced by the Defendants, but which Partminer contends were responsive to the prior requests for production.  Partminer contends that this evidence, as well as certain testimony given by Mr. Williams and others in depositions, reveals that Siliconexpert never undertook a good faith effort to respond to the requests for production.  Partminer is particularly exercised about the discovery of what appears to be a portion of the customer list, which Mr. Williams eventually acknowledged giving to Siliconexpert's marketing department.

Partminer believes that Mr. Williams transmitted this list (and perhaps others) to the marketing department via e-mail.  It assumes that "There was a transmittal email – containing a date and likely correspondence . . . about this PartMiner customer list," but notes that no such e-mail has been produced.  Because the Defendants have not produced any documents relating to the transmittal of this portion of the customers list, Partminer explains that it "can only assume they were destroyed."  It contends that the transmittal occurred sometime in the Fall of 2008, and believes that date to have been sometime after Partminer wrote to Siliconexpert on September 19, 2008, advising of Mr. Williams' legal obligation to refrain from disclosing Partminer's trade secrets.  Thus, Partminer concludes that the Defendants "failed to preserve . . . the best evidence in this case after being notified of their obligation to preserve such evidence."

Partminer's motion sought a variety of sanctions, including: (I) deeming certain facts regarding Siliconexpert's obtaining and use of Partminer's customer list to be established, as permitted by Fed. R. Civ. P. 37(b)(2)(A)(I); (ii) an award of certain discovery costs to Partminer; (iii) a fine against the Defendants for contempt; and (iv) additional orders compelling production of documents, among other things.

On September 23, 2010, the Magistrate Judge issued a Recommendation **(# 194)** that Partminer's motion be granted.  The Magistrate Judge first explained that parties have a general obligation to preserve evidence that may be relevant to pending or imminent litigation, that the Court has inherent power to impose sanctions for a party's culpable destruction of relevant evidence where that destruction prejudices their opponent, and that the party seeking a discovery sanction bears the burden of proving that the opponent destroyed the evidence.

The Magistrate Judge then turned to specific factual findings.  First, the Magistrate Judge noted that the Defendants were on notice of potential litigation as of September 12, 2008, when Partminer commenced the state court suit against Mr. Williams.  Thus, the Magistrate Judge found, "[a]s of this date, [the Defendants] had an obligation to preserve non-privileged materials concerning potential trade secrets."[3]  The Magistrate Judge recounted some of the discovery proceedings discussed above, rejecting certain arguments by Siliconexpert that it "did not understand" the scope of certain orders previously issued by the Magistrate Judge.  Consistent with Partminer's contentions in the motion, the Magistrate Judge found that the Defendants'

---

[3]"[G]iving the benefit of the doubt to Defendants," the Magistrate Judge went on to observe that "as of the commencement of this action on March 18, 2009, Defendants unquestionably had an obligation to preserve and produce non-privileged information that may be relevant to this litigation."

4

initial responses to the requests for production were "incomplete and improperly limited," and that the Defendants' failure to produce documents and e-mails from the fall of 2008 were inconsistent with Mr. Williams testimony "that he e-mailed one of the customer lists that was on the PartMiner flash drive to [Vineet] Chaudhary[, an executive in Siliconexpert's marketing department]."  The Magistrate Judge agreed with Partminer that "the transmittal e-mail" from Mr. Williams to Mr. Chaudhary "would show when Defendant Williams sent it, how broadly it was distributed, and may contain commentary or purposes that shows intent or even malice," and would thus be discoverable.  The Magistrate Judge noted that the Defendants "deny any wrongdoing and deny deleting or destroying any information" from Mr. Williams' (or any other) computer.

After noting the "general rule [ ] that bad faith destruction of a document . . . gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction," but that "mere negligence in losing or destroying records is not enough," the Magistrate Judge found that "there is no 'smoking gun' establishing who caused the loss of data on the computers."  However, the Magistrate Judge found that "the evidence strongly supports the conclusion that the person was Defendant Williams or someone acting on his behalf."  The Magistrate Judge found that Partminer had carried its burden of showing that, after the duty to preserve evidence arose, "the Defendants failed to preserve evidence and, in fact, destroyed it in bad faith and intended to prevent disclosure of relevant evidence on Defendant Williams' computer and other computers owned and operated by Defendant SiliconExpert."  The Magistrate Judge explained that this finding "is primarily based upon the highly-suspect timing of the mysterious disappearance of [computer data] in conjunction with

the letters [from Partminer to Siliconexpert] and the filing of this lawsuit and the [state court] lawsuit." The Magistrate Judge drew an inference that "whoever was responsible knew that the evidence discovered would very well reveal information Defendants did not want revealed," based on "the timing of the destruction." Although the Magistrate Judge did not make express findings as to when the evidence had been destroyed, he found that "the timing of such destruction . . . was after the time in which the Defendants had an obligation to preserve such evidence."

Turning to the question of what the destroyed evidence might have shown, the Magistrate Judge explained that the burden was on Partminer to make such a showing, but that burden was not "too strict a standard of proof." The Magistrate Judge noted that "bad faith [of the destroying party] alone is sufficient circumstantial evidence" to permit the conclusion that the destroyed evidence was unfavorable to the party destroying it. He found that Partminer "has adduced sufficient evidence to support an inference that some of the missing data was harmful to Defendants," insofar as "these computers were the most important sources holding [data] relevant to the matters at issue," and because "there is evidence that e-mail was exchanged between Defendant Williams and Mr. Chaudhary concerning the subject trade secret information." As a result, the Magistrate Judge recommended that Partminer's Motion for Sanctions be granted, and that Partminer be awarded four specific items of relief: (I) an adverse inference instruction to the jury regarding the destroyed evidence and an opportunity for Partminer to amend its Complaint to add a demand for exemplary damages based on that destruction; (ii) that the Defendants produce unredacted mirror images of the hard drives of each computer for each employee of Siliconexpert (at the Defendants' expense); (iii) that the

Defendants file complete responses to all discovery requests referenced in Partminer's Motion

for Sanctions; and (iv) that Partminer be awarded its costs and attorney's fees, including expert

costs, for the Motion for Sanctions and for any additional discovery expenses incurred as a result

of the Defendants' failure to preserve evidence, including compensation for time and expense

involved in "the forensic examination of the computer files."

The Defendants responded with a flurry of filings.  First, they filed a Motion for

Reconsideration (# 205) of a ruling (# 193) by the Magistrate Judge granting Partminer's Motion

to Strike (# 190) a document submitted by Siliconexpert entitled "Evidential Objections . . . to

Statements in Partminer's Motion for Sanctions."  Filed after briefing on the Motion for

Sanctions was complete, the "evidential objections" document simply listed various portions of

Partminer's Motion for Sanctions, the Motion for Sanctions' supporting affidavit, and

Partminer's reply brief, each of which, Siliconexpert contended, "are unsupported by any

admissible evidence," and thus, are not properly before the Court."  Partminer moved to "strike"

the "evidential objections," contending that they were an improper surreply, were not

procedurally proper, and were "unfounded, argumentative, and harassing."  The Magistrate

Judge granted Partminer's Motion to Strike "for the reasons as outlined in the subject motion."

The Defendants' Motion for Reconsideration contended that the Magistrate Judge's

order: (I) improperly granted striking under Fed. R. Civ. P. 12(f), which applies only to

pleadings; (ii) erroneously characterized the objections as surreply when they were "filed before

PartMiner's reply brief"; (iii) improperly concluded that "the filing of a written objection . . . to

object to the inadmissibility of evidence" was not a well-established practice, even if not

contemplated by a specific procedural rule; (iv) improperly adopted Partminer's "unfounded,

argumentative, and harassing" contention, even though no such standard for striking exists.

Next, the Defendants filed timely Objections **(# 211)** to the Recommendation. They contend that "[n]ewly discovered facts" – which, they conceded, had not previously produced to the Magistrate Judge – "reveal[ ] why no email from Williams initially transmitting the list to Cahudhary could be found." They explained that "the list was not sent by Williams to Chaudhary directly," but rather, on September 16, 2008, it was sent through an intermediary, Siliconexpert's sales representative Roya Ansari, who transmitted it to Siliconexpert's CEO, Omar Ahmad, who proceeded to forward the list to Mr. Chaudhary. The Defendants then proceed to argue that: (I) there is no evidence that Mr. Williams actually retained Partminer data, and that the "customer list" he transmitted to Mr. Chaudhary was one compiled by Mr. Williams from his own memory, sent to Mr. Chaudhary for the purpose of "determin[ing] what contacts SiliconExpert already had with the listed entities"[4]; (ii) that the entire e-mail chain between Mr. Williams and Mr. Chaudhary "was in the hands of PartMiner's counsel at the time the Sanctions motion was filed"; (iii) the Magistrate Judge was thus incorrect in stating that "SiliconExpert has taken the position that it does not have any transmittal emails"; (iv) that the Magistrate Judge did not identify what data was "allegedly lost" (although the Defendants acknowledge that "apparently this is intended to be a reference to transmittal emails between Williams and Chaudhary"); (v) that, at some unspecified time, defense counsel "initiated an investigation to determine exactly when and how the [subject customer list] came to be in Chaudhary's

---

[4]The Court rejects this argument out of hand. There is no apparent logic for differentiating between Mr. Williams copying confidential information directly from Partminer's computers and Mr. Williams compiling that information "from his memory" at some other point in time.

possession, and that such investigation revealed that Mr. Williams sent the list through Mr./Ms. Ansari, not directly to Mr. Chaudhary; (vi) Partminer's contention that the 270,000 documents located through the search of Mr. Williams' computer is unsupported and none of the documents referenced by Partminer are actually responsive to the requests for production; (viii) there was no basis for the Magistrate Judge to order Siliconexpert to produce mirror images of every computer used by every one of its approximately 250 employees; and (ix) Partminer's Motion for Sanctions was not the subject of proper pre-filing conferral as required by D.C. Colo. L. Civ. R. 7.1(A).

Finally, the Defendants filed a Motion for Reconsideration of the Recommendation (**#208**).  They explained that they were filing this motion "out of an abundance of caution" because the parties disagreed as to whether the Recommendation was reviewable as a final order under Fed. R. Civ. P. 72(a), or as a recommendation under Rule 72(b).  This motion essentially repeats some of the arguments raised in the Defendants' Objections.

Particularly mindful of the Defendants' claim of newly-discovered evidence, this Court deferred ruling (**# 225**) on Siliconexpert's Objections, referring the matter back to the Magistrate Judge for further consideration.  On November 9, 2010, the Magistrate Judge issued an Order (**#231**) that simply found that Siliconexpert's motions did not "set forth any manifest error of law or fact or present newly discovered evidence that warrants a change" of the prior rulings.

## ANALYSIS

### A.  Standard of review

Although it appears that the Motion for Sanctions was not dispositive of any claim or defense, and thus suitable for a final ruling by the Magistrate Judge pursuant to Fed. R. Civ. P.

72(a), the Magistrate Judge elected to issue a Recommendation on the motion instead.  As a result, it appears appropriate for this Court to review those portions of the Recommendation that Siliconexpert has specifically objected to *de novo*, as required by Fed. R. Civ. P. 72(b).

The Magistrate Judge issued a final order on Partminer's Motion to Strike the "evidential objections." This Court deems Siliconexpert's Motion for Reconsideration of that order to be an Objection pursuant to Fed. R. Civ. P. 72(a).  Under Rule 72(a), the Court will affirm the Magistrate Judge's order unless it is "clearly erroneous or contrary to law."  *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications*, *Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).  Accordingly, Siliconexpert's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

**B.  Reconsideration of "striking" of "evidential objections"**

Because the Defendants' Objections to the Magistrate Judge's order striking the "evidential objections" arguably informs the scope of the Motion for Sanctions, it is appropriate to address those Objections before proceeding further.

This Court finds the Defendants' Objections to be without merit.  Partminer filed the Motion for Sanctions and supporting exhibits on July 28, 2010.  The Defendants filed their response to that motion on August 19, 2010 (**# 176, 177**).  To the extent the Defendants believed that Partminer's motion relied on inadmissible or insufficient evidence, this was Siliconexpert's opportunity to raise that contention.  To the extent that the Defendants' response brief did not contend that factual assertions in Partminer's motion were not supported by suitable evidence,

the failure to timely raise those arguments operated to waive them.[5]  Thus, the Magistrate Judge was correct that, to the extent the "evidential objections," filed several weeks later on September 3, 2010, contained arguments addressed towards Partminer's initial motion, those objections were untimely.

The situation is only slightly different with regard to that portion of the Defendants' objections that addressed alleged evidentiary defects in Partminer's reply brief.  Because the Defendants would not normally be entitled to file a response to alleged errors in Partminer's reply brief, the Court cannot say that the "objections" were untimely.[6]  However, when a party believes that the contentions in the opponent's reply brief require a response, the proper approach is for the party to seek leave to file a surreply.  *See e.g. Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1191-92 (10th Cir. 2006).  Because the Defendants did not seek leave to file their objections to misstatements in Partminer's reply brief, the Magistrate Judge correctly found that the objections were an improper surreply.

This Court agrees, in an abstract sense, with the Defendants that the relief requested by Partminer and approved by the Magistrate Judge was improper.  The Defendants are correct that the remedy of "striking" is contemplated in the Federal Rules of Civil Procedure only in Rule 12(f), which by its terms is limited to striking "redundant, immaterial, impertinent, or scandalous

---

[5]Ultimately, the Court has some doubt that this entire line of discussion is meaningful. On motions requiring evidentiary showings – such as Partminer's Motion for Sanctions – factual assertions in a brief that are not supported by appropriate evidence are not credited by the Court. *See e.g. BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[6]The Defendants' contention that "the Evidential Objections were filed before PartMiner's reply brief," however, is patently false. Partminer's reply brief was filed on September 1, 2010, and the Defendants' objections were filed on September 3, 2010.

matter" in "a pleading." *See also* Fed. R. Civ. P. 7(a) (defining "pleadings").  But the error is simply one of nomenclature.  In purporting to "strike" the improper filing, the Magistrate Judge was properly indicating that the filing would be disregarded in considering the Motion for Sanctions.  For the reasons given above, it was entirely proper for the Magistrate Judge to disregard the Defendants' "evidential objections," and this Court has disregarded them for the same reasons.  Accordingly, to the extent that the Defendants' Motion for Reconsideration can be deemed a Rule 72(a) Objection to the Magistrate Judge's ruling granting Partminer's Motion to Strike, the Court finds that the Magistrate Judge's ruling is not clearly erroneous or contrary to law, and the Defendants' Objection is overruled.

### C.  Objections to Recommendation/Motion for Reconsideration of Recommendation

The Court thus turns to the Defendants' Rule 72(b) Objections to the Magistrate Judge's Recommendation that the Motion for Sanctions be granted.  The Recommendation can be divided into two parts – that dealing with Partminer's request for relief based on spoliation, and that dealing with sanctions for the Defendants' failure to fully respond to the requests for production.  The Court will address these issues in turn.

### 1.  Spoliation

The Defendants do not dispute the Magistrate Judge's recitation of the legal standards governing the issue of spoliation, and this Court agrees that the Magistrate Judge correctly identified the principles of law governing this issue.   Spoliation occurs when: (I) a party has a duty to preserve evidence, usually because the party knows or should know that the evidence is relevant to imminent or existing litigation; (ii) that party destroys the evidence intentionally or in bad faith; and (iii) the destruction of the evidence works to the opponent's prejudice.

*Oldenkamp v. United American Ins. Co.*, 619 F.3d 1243, 1250-51 (10th Cir. 2010); *Hatfield v. Wal-Mart Stores, Inc.*, 335 Fed.Appx. 796, 804 (10th Cir. 2009) (unpublished); *Doe v. Oklahoma City University*, 2010 WL 5395011 (10th Cir. Nov. 2, 2010) (slip op.) (unpublished).

Although the Recommendation is somewhat vague, referring only to "electronically stored information" that was destroyed, it appears that the parties and the Court all understood that only one particular item of evidence was truly at issue: the transmittal e-mail by Mr. Williams that attached the customer list sent to Mr. Chaudhary.  It was that transmittal e-mail that Partminer contends "would allow PartMiner to establish when Williams sent it, how broadly it was distributed, and with what commentary or purpose."  Partminer does not identify with any specificity any other item of evidence that was allegedly destroyed, and thus, the Court limits its analysis to the transmittal e-mail accompanying the customer list.

Before the Court can grapple with this issue, it must first address the Defendants' "newly-discovered evidence."  The Defendants' Objections attach an affidavit from Mr. Williams.  He explains that, initially, at the request of defense counsel, he "conducted a search of the email 'sent items' folder of my computer to [locate any email] that is addressed to Chaudhary and transmits the [customer list] to him."  He explains that "the only email that I could find [meeting those criteria] formed part of an email chain that culminated in an October 27, 2008 email from Chaudhary to me . . . but I could not find any email initially transmitting the list to Chaudhary."  He goes on to explain that, after the Magistrate Judge had issued the Recommendation, defense counsel asked him to again determine whether he had e-mailed the customer list to Mr. Chaudhary.  He states that "I found no such email," but that "further research revealed that in fact I emailed the list to [Mr./Ms. Ansari] on September 16, 2008," and

that the list eventually made its way to Mr. Chaudhary.

The Court is troubled by this representation.  Mr. Williams' affidavit suggests that he was initially instructed by defense counsel to purposefully conduct the most narrow possible search, limiting himself to searching only for emails that are "addressed to [Mr.] Chaudhary" and which attach the customer list.  This narrow search is inconsistent with the scope of Partminer's Request for Production 9, which sought "all communications or documents . . . referencing PartMiner or the solicitation of PartMiner customers."[7]  The request does not purport to limit its scope to only those communications involving Mr. Chaudhary, and thus, the instructions given to Mr. Williams seem to have been purposefully designed to limit the amount of responsive information that would be located and produced.  This alone is sufficient to warrant the Magistrate Judge's conclusion that the Defendants should bear Partminer's costs and fees for making the motion for sanctions. Fed. R. Civ. P. 37(a)(5)(A).   Indeed, Mr. Williams' affidavit reveals that a proper search of his e-mail – one which sought to uncover <u>any</u> instance of the customer list being sent to <u>anyone</u> within Siliconexpert – would have readily produced the transmittal e-mail that was the focus of Partminer's motion.

---

[7]The Defendants seem to suggest that the e-mail from Mr. Williams to Mr./Ms. Ansari does not "referenc[e] PartMiner or the solicitation of PartMiner customers," but this Court rejects such a contention.  Mr. Williams acknowledges that he distributed the list to officials at Siliconexpert "in order to compete for these accounts . . . so if no other salesperson at SiliconExpert were assigned these accounts, [ ] they could be assigned to me and ultimately to do business with them."  Because the entire purpose of Mr. Williams distributing the list was to facilitate the "solicitation of PartMiner customers," any e-mail concerning distribution of the list would necessarily be responsive to Request for Production 9.  In this respect, this Court agrees with the Magistrate Judge that any professed confusion by Siliconexpert over "what the term 'customers' of Partminer encompassed" is disingenuous and that the Defendants "knew that, at a minimum, it encompassed [communications referencing or including] the list of PartMiner customers."

But putting aside the conduct of defense counsel and Mr. Williams in needlessly circumscribing their search for documents responsive to Request for Production 9, the disclosure of the September 16, 2008 e-mail from Mr. Williams to Mr./Ms. Ansari appears to ameliorate the need for a finding of spoliation.  Partminer's Motion for Sanctions was premised, in the first instance, upon an assumption that because the transmittal e-mail was not produced, it must therefore have been "destroyed."  *Docket* # 167 at 15 ("Since SiliconExpert has not produced [the] documents . . . PartMiner can only assume they were destroyed").  Although the Defendants and their counsel are largely to blame for allowing this assumption to take root, the record indicates that the assumption was false.

Because the Defendants have now produced the subject document – and the Court does not understand Partminer to contend that the September 16, 2008 e-mail is not the transmittal e-mail that was the primary subject of the motion for sanctions – there is no need for the Court to impose sanctions premised on spoliation concerns or give an adverse inference instruction concerning the transmittal e-mail at trial.  (Partminer essentially concedes as much, as its response to the Defendants' Objections does not clearly contend that the justification for a spoliation instruction remains.)  As a result, the Court does not adopt the spoliation portion of the Recommendation.

### 2. Discovery responses

Partminer is correct, however, that the disclosure of the September 16, 2008 e-mail from Mr. Williams to Mr./Ms. Ansari only raises more questions about the sufficiency of the Defendants' existing discovery responses.  The e-mail from Mr. Williams to Mr./Ms. Ansari bears a subject line "RE: FW: Cross reference demo request," suggesting that Mr. Williams

15

passed along the customer list as a reply to or forwarding of another message.[8]  In that event, the

entire chain of "Cross reference demo request" e-mails may be discoverable.  Certainly, any

communications between Mr./Ms. Ansari and Mr Ahmad about the customer list supplied by Mr.

Williams would be responsive to Request for Production 9, as would any communications

between Mr. Ahmad and Mr. Chaudhary.  Because the briefing by the parties on the Motion for

Sanctions was primarily focused on Mr. Williams' transmittal e-mail, which has now been

produced, this Court will not speculate as to what other discoverable documents,  not yet been

produced by the Defendants, might exist.

The Magistrate Judge's Recommendation includes an instruction to the Defendants to

"respond to all discovery requests . . . with full and complete responses," and this Court finds

such an order to be reasonable in the circumstances presented here.  The Court expects that any

further discovery disputes in this action will be evaluated by the Magistrate Judge mindful of the

unreasonableness of the Defendants' conduct thus far.

The only remaining portion of the Magistrate Judge's recommendation is that which

requires the Defendants to produce "unredacted mirror image[s] of the hard drives of each

computer for each employee of Defendant Siliconexpert" (as well as a full, unredacted image of

Mr. Williams' hard drive), at the Defendants' expense.  The Defendants argue that this relief

exceeds that requested by Partminer's Motion for Sanctions.  Partminer's motion requested that

the Court "order SiliconExpert to search the computers used by its involved employees (such as

---

[8]Arguably, Mr. Williams may also have simply hit "reply" or "forward" on an unrelated
message simply for the purpose of opening up a message shell that would be addressed to
Mr./Ms. Ansari, but failed to modify the subject line of the message to accurately reflect its new
contents.

Ahmad, Chaudhary, Holbrook, Roya Ansari, and Fair) and produce all responsive documents." This Court agrees with the Defendants that the relief recommended – which would involve the computers of some 250 Siliconexpert employees located around the world – exceeds that which is warranted by the record. The Magistrate Judge made no particular findings that would explain why there is reason to believe that all – much less most – of Siliconexpert's employees' computers would yield discoverable information relating to this matter.

Partminer was content to limit its request to having Siliconexpert conduct a search the computers of "its involved employees" (including those listed by name). However, this Court cannot say that, given the Defendants' recalcitrance to abide by their obligation to produce all relevant discovery, the Magistrate Judge erred in granting more sweeping relief than Partminer requested by directing the production of the entire, unredacted computer hard drives of Siliconexpert employees.

The Magistrate Judge's solution is twofold - first, it essentially revokes the Defendants' discretion to sift out relevant material and hands that obligation over to Partminer. This is a severe sanction, but this Court cannot say that, on this record, it is unjustified. Second, it applies expands the search to all computers of all employees. As to scope, this Court cannot find that the record justifies extending that order beyond the "involved employees" in this case.

Accordingly, the Court will modify this portion of the Recommendation as follows: the Defendants shall produce, at their expense, unredacted mirror images of the hard drives of each computer used by Mr. Williams and any Siliconexpert employee who received, directly or indirectly, the customer information disclosed by Mr. Williams. (This includes all those listed by name in Partminer's Motion for Sanctions.) To the extent the parties cannot agree as to the

17

scope of this obligation, they may seek clarification from the Magistrate Judge.

The Court has considered all of the Defendants' remaining arguments and finds them to be without merit.

## CONCLUSION

For the foregoing reasons, the Defendants' Objections (**# 211**) to the September 23, 2010 Recommendation (**# 194**), and, to the extent it is duplicative of those Objections, the Defendants' Motion for Reconsideration of the Recommendation (**# 208**), are **SUSTAINED IN PART** and **OVERRULED IN PART** as set forth herein.  The Court **ADOPTS IN PART** the Recommendation.  Partminer's Motion for Sanctions  (**# 169**) is **GRANTED IN PART** and **DENIED IN PART** as follows: (I) the Defendants shall produce, at their expense, unredacted mirror images of the hard drives of each computer used by Mr. Williams, Mr. Ahmad, Mr. Chaudhary, Mr. Holbrook, Mr./Ms. Ansari, and Mr./Ms. Fair, as well as any other Siliconexpert employee who received, directly or indirectly, the customer information disclosed by Mr. Williams, such production to take place within 30 days of the date of this Order; (ii) the Defendants shall respond to all discovery requests as outlined in the Motion for Sanctions with full and completed responses, such response to take place within 30 days of the date of this Order; (iii) the Defendants shall pay Partminer's reasonable attorney's fees and costs, including expert costs, incurred in making the Motion for Sanctions and ensuing briefing; (iv) the Defendants shall pay Partminer's costs of obtaining whatever additional discovery may be awarded by the Magistrate Judge relating to the matters at issue in this Order.  The Defendants' Motion for Reconsideration (**# 205**), to the extent it can be considered to be a Rule 72(a) Objection to the Magistrate Judge's September 22, 2010 Order (**# 193**), is **OVERRULED**.  The

Defendants' Motion for Oral Argument (**# 207**) and Partminer's Motion for Hearing (**# 243**) are

**DENIED AS MOOT**.

     Dated this 9th day of February, 2010

                           **BY THE COURT:**

                           Marcia S. Krieger
                           United States District Judge